IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA RODRIGUEZ and ROCIO FRANCISCO, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>STELLA SMOLKA, DARIUS SMOLKA, and BEST MAIDS INC.,<br><br>      Defendants. | Case No. 19 C 8390 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maria Rodriguez and Rocio Francisco, former employees of Best Maids Inc., have sued Best Maids, Stella Smolka, and Darius Smolka (collectively, Best Maids) under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206 and 207, seeking unpaid overtime wages and other relief.[1] The plaintiffs have moved for conditional collective-action certification under section 216(b) of the FLSA and seek approval to send notice of the suit to other similarly situated plaintiffs. For the reasons stated below, the Court grants the plaintiffs' motion.

### Background

Best Maids is an on-site cleaning service. Since July 27, 2017, the start of the proposed class period, it has employed 90 housekeepers and serviced around 900

---

[1] Norma Salinas, who was originally named as a plaintiff, was dismissed from this suit.

home and business clients. Stella Smolka is Best Maids' President; Darius Smolka is its Secretary. Rodriguez was a Best Maids housekeeper from August 2015 through December 2019; Francisco was employed in the same position from November 2015 through November 2019.

At bottom, the plaintiffs claim that they and the other potential plaintiffs share the same core complaints: (1) they were not paid for time spent traveling between worksites and (2) they were not paid for all hours worked, in violation of the minimum wage and overtime provisions of the FLSA.

The plaintiffs were required to travel to and between their various worksites. The plaintiffs allege that when they began working at Best Maids they were not formally compensated for travel time. Instead, according to the plaintiffs, if they had completed their work, they were allowed to leave the worksite up to fifteen minutes early to travel to their next worksite. If the plaintiffs did not finish work early, however, the time spent traveling between locations went unpaid (or underpaid). During her deposition, Rodriguez testified that she overheard other employees complaining that their travel time was underestimated and therefore undercompensated.

In addition to her housekeeper duties, Francisco drove colleagues to and from worksites and was required to regularly travel to Best Maids' office to drop-off and pick-up supplies, equipment, and keys. She alleges that she was not paid for this time.

Both plaintiffs further allege that Best Maids used an electronic schedule to assign work and to track start and end times for each assignment. The schedule provided a range of times by which the plaintiffs were to arrive at each worksite (the plaintiffs allege that they were expected to arrive at the start of this range), and also

provided an allotted time for completing each assignment (Best Maids paid its housekeepers hourly wages based on these allotted times). The plaintiffs allege that the defendants often allotted less time for cleaning worksites than was actually needed. They also allege that when they sought additional compensation for time spent cleaning beyond the allotted time, they rarely secured an adjustment in their pay.

## Discussion

Under the FLSA, "employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).

The conditional collective-action approval process is "used by district courts to establish whether potential plaintiffs in [an] FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). The plaintiffs are asking for permission to send notice about the pendency of this suit to current and former Best Maids housekeepers.

In this district, courts employ a two-step process for determining whether an FLSA suit should be certified as a collective action. *Fields v. Bancsource, Inc.*, No. 1:14-CV-7202, 2015 WL 3654395, at *2 (N.D. Ill. June 10, 2015). At step one—the current step—the plaintiffs must show that the other potential plaintiffs are "similarly

situated" by making a "modest factual showing sufficient to demonstrate that they and [the other] potential plaintiffs together were victims of a common policy or plan that violated the law."  *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017).

"To determine whether [the] plaintiff has made the required modest factual showing, [the] plaintiff[ ] must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law."  *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (internal quotation marks omitted).  At this stage, the "court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant."  *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013).  "Courts use a 'lenient interpretation' of the term 'similarly situated' in deciding whether plaintiffs meet this burden.  *Grosscup*, 261 F. Supp. 3d at 870.  It is a "low standard of proof."  *See id.*

If the plaintiff makes the "modest factual showing" required, the court may allow the sending of notice of the case to other potential plaintiffs, who then have the opportunity to opt in.  *Nicks*, 265 F. Supp. 3d at 849.  Following the opt-in process comes step two, at least if the defendant seeks decertification.  *See id.*  In step two—which is not before the Court at this point—the court must "reeevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis."  *Id.*  If the court determines that such similarities do not exist, it may revoke the conditional

certification. *See id.*

1.  **Conditional certification**

The plaintiffs argue that conditional certification is appropriate because they and the potential plaintiffs to whom they seek to provide notice performed largely similar duties and were compensated under the same challenged compensation practices.[2] At bottom, the plaintiffs contend that they and the potential claimants share the same core complaints: (1) no pay for time spent traveling between worksites and (2) no pay for all hours worked, in violation of the minimum wage and overtime provisions of the FLSA.

The defendants raise two primary objections; the Court considers both below.

a.  **Evidence that notice recipients are similarly situated**

First, Best Maids contends that the plaintiffs' evidence is insufficient for conditional certification. The defendants describe the evidence supporting the underlying motion as "flimsy" because the evidence at this stage of the proceedings does not "evince any clear, common practice of denying compensation." But that's not how this works. At this stage, the plaintiffs need only provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jirak*, 566 F. Supp. 2d at 848. This is a "minimal," *id.*, or "modest" showing. *Grosscup*, 261 F. Supp. 3d at 870.

---

[2] Though Francisco (and possibly some of the potential plaintiffs) had additional transportation duties, the plaintiffs argue that these additional responsibilities do not defeat their collective-action request. The Court agrees. "[T]he plaintiffs do not need to show that other potential class members worked under *identical* circumstances, but only that their circumstances were similar." *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 C 3452, 2013 WL 707992, at *4 (N.D. Ill. Feb. 26, 2013). And, in any event, "the mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class." *Jirak v. Abbot Labs., Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008).

The plaintiffs have not presented an overwhelming case, but they have made the required showing. With regard to travel-time pay, both Francisco and Rodriguez testified that when they first began working for Best Maids, the company had no formal policy for paying for travel between worksites. Rodriguez testified that even after Best Maids began accounting for travel time, it routinely underestimated the length of her travel time and the time it took to find parking. She also testified that she heard other employees complaining that their travel time was similarly underestimated. Finally, Francisco testified that she was not paid for travel time when she was obligated to go to Best Maids' offices and for when had to transport her co-workers.

With regard to overtime pay, both plaintiffs testified that they were rarely compensated for time spent working beyond a worksite's allotted time. Defendants have conceded that point, though they argue that an employee need only call and adjust her time to ensure she is paid for additional time. Further, Rodriguez testified that when she finished an assignment early, she was paid for the time allotted, not time spent.

And, on both points, the plaintiffs state in their affidavits that they have trained multiple housekeepers who were also similarly undercompensated and unhappy because of pay discrepancies. They also state that there was a great deal of employee turnover due to these pay discrepancies.

    **b.**    **Common policy or practice**

Second, Best Maids argues that the plaintiffs have failed to establish a common policy or plan that violates the FLSA because: (1) the time spent transporting co-

workers is not compensable;³ (2) the overtime policy—that housekeepers must call if they are to work beyond their allotted time—is a lawful means of compensation and, due to a number of individual factors, cannot be addressed collectively; and (3) travel time between sites was accounted for through multiple methods and a collective action is inappropriate due to individual factors. "All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA." *Salmans*, 2013 WL 707992, at *5.

Best Maids' arguments are not a basis to deny conditional certification; they are "more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." *Jirak*, 566 F. Supp. 2d at 850. Even if Best Maids is right and individual issues may predominate, "[t]he mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class." *Id.* Additionally, disposition of Best Maids' arguments "requires discovery and goes to the merits of the case," which is inappropriate at the stage. *See Salmans*, 2013 WL 707992, at *5.

For these reasons, the Court concludes that the plaintiffs have satisfied "the minimal showing necessary for conditional certification and notice to the potential class members." *See Jirak, Inc.*, 566 F. Supp. 2d at 850. Of course, should there be "no uniform policy common to the class members who opt in," or should the Court determine that the class is "hopelessly heterogenous," the case will not be permitted to

---

³ It's worth noting that Francisco testified that she was *directed* to pick-up co-workers and transport them to worksites. Francisco's testimony, therefore, stands in direct contrast with Best Maids' contention that she would not have been working when transporting her colleagues.

7

proceed as a collective action after step two. *Id.*

### 2. Notice

After a conditional approval of a collective action, "the court has managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989).

Best Maids asks for several revisions to the plaintiffs' proposed notice. First, Best Maids argues that the notice should date back from the date notice is mailed rather than the date the plaintiffs filed their motion. Though Best Maids cites two cases in which other courts mandated their preferred instruction, those cases provide little to no reasoning for their decision, and the Court finds them unpersuasive.

Second, Best Maids urges the Court to include language explaining that opt-ins "may have to . . . be deposed, or testify at trial" to enable "a fully informed decision regarding whether to join this suit." *See Fields*, 2015 WL 3654395, at *5. The Court agrees that the notice should include a statement notifying the potential plaintiffs that they may be required to participate in proceedings and instructs the plaintiffs to include the following language: "While the suit is proceeding, you may be required to provide information, appear for a deposition, and testify in court." *See Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008).

Third, Best Maids asks for a 60-day opt-in period. In their motion, the plaintiffs ask for a 60-day opt-in period as well; in their proposed notice form, however, the plaintiffs ask for 75 days. The Court instructs the plaintiffs to restrict the opt-in period to 60 days.

Fourth, Best Maids asks the Court to make clear that an opt-in plaintiff may be responsible for the defendants' costs if the suit is not successful. The Court overrules that request.

Fifth, and finally, Best Maids argues that the plaintiffs do not need potential plaintiffs' personal telephone numbers and email addresses, because "there is no showing that mail delivery is insufficient." But "[c]ollective actions under Section 216(b) necessitate a broader scope of discovery in order to identify similarly situated employees who may wish to opt-in to the suit." *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008). This contact information is necessary to ensure that similarly situated individuals may be contacted through multiple avenues. Moreover, unlike the defendants in the cases they cite, Best Maids does not argue that this information must be withheld to protect opt-in plaintiffs' privacy rights. *See Frebes v. Mask Restaurants, LLC*, No. 13 C 3473, 2014 WL 1848461, at *7 (N.D. Ill. May 8, 2014) ("Information about opt-in plaintiffs, beyond names and addresses, may be withheld to protect the opt-in plaintiffs' privacy rights.") (citing *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009)). And any such argument would have been unpersuasive, as the plaintiffs' "interest in locating and contacting similarly situated employees outweighs the limited privacy interests" in telephone and email addresses. *See Russell*, 575 F. Supp. 2d at 939.

## Conclusion

For the reasons stated above, the Court grants in part the plaintiffs' motion for conditional certification and judicial notice [docket no. 35]. As noted in the defendants' response, the plaintiffs' proposed notice has several errors. The parties are directed to

9

confer promptly and are to provide the Court, by January 15, 2021, a revised draft notice consistent with this opinion.

The case is set for a telephone status hearing on January 20, 2021 at 8:45 a.m. to set a schedule for further proceedings, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves. Before the status hearing, counsel are to confer and attempt to agree upon a discovery and pretrial schedule to propose to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 11, 2021